IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PAUL A. FAHMY,

    Plaintiff,

v.

COMMISSIONER PERRY PHELPS, et al.,

    Defendants.

: Civil Action No. 18-1042-RGA

Paul A. Fahmy, James T. Vaughn Correctional Center, Smyrna, Delaware.
Pro Se Plaintiff.

## MEMORANDUM OPINION

May 30, 2019
Wilmington, Delaware

*signature: Andrews*
ANDREWS, U.S. District Judge:

Plaintiff Paul A. Fahmy, an inmate at the James T. Vaughn Correctional Center in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983.[1] (D.I. 1). He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 9). His original Complaint was dismissed and Plaintiff was given leave to amend. (D.I. 16, 17). The Court screens and reviews the Amended Complaint[2] pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(a). It names ten defendants, not including John and Jane Does. (D.I. 23 at 1-2).

## BACKGROUND

On October 3, 2016, Plaintiff was scalded with chemicals and assaulted by another inmate while he was talking on the phone. Defendant Officer Thomas P. Runyon saw two inmates fighting, called a Code 8 and when he arrived at the tier saw Plaintiff, who had a torn T-shirt, scratches on his neck and bruises to his face. (D.I. 23-1 at 1). A second assailant was not identified. (*Id.*). Plaintiff was questioned by Defendant Officer Sergeant Floyd and Staff Lieutenant Charles Sennett, but he did not provide any answers on why there were marks on him.[3] (D.I. 23 at 11; D.I. 23-1 at 1). Sennett told Plaintiff that he would be moved to isolation. (D.I. 23 at 12). Plaintiff

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] Plaintiff submitted exhibits with the Amended Complaint including medical records, grievances, and disciplinary reports, all of which are considered by the Court in screening the Amended Complaint. (See D.I. 23-1 at 1-44; D.I. 24; D.I. 25).

[3] Lt. Floyd died during the February 2017 riot at the VCC.

1

alleges that he was "treated like the aggressor . . . and moved to maximum security." (*Id.* at 4). Runyon prepared a disciplinary report and Plaintiff was charged with fighting and failing to obey an order. (D.I. 23-1 at 1). During the October 4, 2016 disciplinary hearing, Defendant Lt. Michael Welcome found Plaintiff guilty of both charges, and Plaintiff appealed. (*Id.* at 3). Plaintiff was sanctioned to five days of isolated confinement. (*Id.*). Defendant Captain Marcello Rispoli reviewed the decision, spoke to two witnesses who relayed that Plaintiff said he was "not assaulted that he was just working out" and spoke to another witness who said he saw Plaintiff fighting but could not identify the other inmate. (*Id.* at 2). On appeal Plaintiff stated that he was attacked by an unknown person while he was using the phone. (*Id.*).

Plaintiff alleges that he was kept in isolation while he appealed and that Rispoli's staff punished him for being attacked. (D.I. 23 at 5). Plaintiff alleges that when his mother called to check on his well-being, then VCC warden Defendant David Pierce, "disrespected" her and told her that Plaintiff was lying. (*Id.*). On October 11, 2016, Pierce sent Defendants Lt. Heishman and Lt. Burman to interrogate Plaintiff. (*Id.*). Plaintiff claims that, because other inmates saw that he was pulled from his cell by the lieutenants, they suspected that he was a snitch and this placed him in more danger. (*Id.*). The lieutenants told Plaintiff that Pierce was tired of hearing from Plaintiff's loved ones, and they knew that Plaintiff was lying to get attention. (*Id.*). Burman took photos of Plaintiff's injuries. (*Id.*). Plaintiff alleges that Defendant Delaware Department of Correction Commissioner Perry Phelps was "made aware of all of this and he said he 'trusted his staff's actions.'" (*Id.*). The appeal was denied and the appeal decision was sent to Pierce. (D.I. 23-1 at 2).

2

Plaintiff received chemical burns to his face and injuries to his ear. Plaintiff was shackled and taken to the infirmary for examination. (D.I. 23 at 12). Plaintiff alleges that when Defendant R.N. Irene Fuh examined him, she told him that she saw some slight redness, but that Plaintiff "looked fine overall." (*Id.*) He alleges that Fuh did the intake assessment and then lied in his records and said she did not do the intake.[4] (*Id.* at 6). Plaintiff alleges that, once he was taken to isolation, he was not further examined, and he told every officer who came by his cell during the next 48 hours that he needed to see medical staff; he was told to submit a sick call slip. (*Id.* at 12). Plaintiff alleges that "nurses were doing the same." (*Id.* at 13).

Plaintiff alleges that on October 5, 2016, Defendant R.N. Eric Neba chuckled at Plaintiff's situation, but later Plaintiff was called off the tier and examined by Neba. (*Id.*). Plaintiff alleges that Neba lied in his assessment to "downgrade" Plaintiff's injuries. (*Id.* at 6). On several occasions, Plaintiff was seen by Neba and other nurses who are not named as Defendants, although Plaintiff has named John/Jane Doe Defendants.

Plaintiff alleges that he was not sent to see an outside physician until twenty-five days after he was injured. (*Id.* at 14). According to Plaintiff, the physician assessed Plaintiff's hearing and told him he was at "20 decibels," and with the injury Plaintiff would only recover up to "40 decibels at best." (*Id.*). The physician told Plaintiff that a normal individual's hearing is 60 decibels. (*Id.*).

---

[4] An October 5, 2016 progress note prepared by Fuh states, "This nurse did not complete Pre-segregation assessment for this Patient on 10/3/2016." (D.I. 24 at 2). It does not say that she did not do the intake.

3

Progress notes indicate that Plaintiff was seen by medical and mental health on October 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 17, 21, 24, 25, and 28; and November 2, 3, 4, 8, 2016. (D.I. 24 at 1-10). On October 5, 2016, Plaintiff's left ear was examined after he complained that he could not hear. (*Id.* at 2). During October, Plaintiff was placed on antibiotics, given antibiotic cream, and ear drops were administered to his left ear. (*Id.* at 1-6). Plaintiff submitted grievances on October 12 and 14, 2016, complaining that ear drops were not being administered correctly. (D.I. 23-1 at 18-19, 32-35). The grievance was upheld after it was discovered that on two days, Plaintiff received only one dose of medication when it was ordered as "twice daily." (*Id.* at 39). Investigation clarified that "ear drops were ordered around 4 PM on 10/5 so [Plaintiff] would only be scheduled for one dose on the 5th. He only received one dose on 10/6 and this [was] not consistent with the . . . order. The remainder of the dosages, *i.e.* twice daily are annotated as given for the remainder of the treatment." (*Id.*). On October 28, 2016, Plaintiff was seen by an outside ENT and on November 8, 2016, his medical records were sent to the ENT for document review. (D.I. 24 at 8-9). In the meantime, on October 25, 2016, Plaintiff submitted a medical grievance and requested that he be "sent out to a proper doctor." (D.I. 23-1 at 21). The grievance was denied, noting that Plaintiff had been seen for the issue multiples times, had seen an offsite ENT provider in October 2016, and a treatment plan was in place. (*Id.* at 27-28).

Audiometric testing on January 13, 2017 found "mixed hearing loss for the left ear" and tympanometry revealed "noncompliant mobility for the left ear." (D.I. 24 at 10). Plaintiff submitted a medical grievance on March 7, 2017, complaining that he was being denied medical treatment. (D.I. 23-1 at 11). A First State ENT progress note

4

dated October 2, 2017, summarized Plaintiff's condition as "persistent left ear perforation of more than 1 year duration associated with exposure to hot scalding liquid. He has moderate mixed hearing loss with a air-bone gap of 20 dB in the right ear. Tympanoplasty was recommended in the past, but patient appears to be skeptical about proceeding with surgery. . . At present we will hold off on scheduling his tympanoplasty and he will call office if wants to proceed with surgery." (D.I. 24 at 11).

Plaintiff seeks injunctive relief "to be free of danger" and compensatory damages.

## SCREENING OF COMPLAINT

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013). *See also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Amended Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94.

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 U.S. at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant Plaintiff leave to amend his Complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 10.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth;

6

and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## DISCUSSION

**Respondeat Superior**. It seems that Warden Pierce and Commissioner Phelps have been named as defendants based upon their supervisory positions. Plaintiff alleges that Pierce "disrespected" his mother and sent two lieutenants to interrogate Plaintiff. Neither of those acts are constitutional violations. Plaintiff alleges that Phelps was made aware of his complaints and said he trusted his staff's actions. This statement did not violate Plaintiff's constitutional rights. Further, as will be discussed below, the allegations in the Amended Complaint fail to state claims of violations of Plaintiff's constitutional rights.

There is no respondeat superior liability under § 1983. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). A defendant in a civil rights action "cannot be held responsible for a constitutional violation which he [ ] neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007); *see also Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (holding that liability in a § 1983 action must be based on personal involvement, not respondeat superior). Such involvement

7

may be "shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

To the extent the claims are raised against Pierce and Phelps based solely on the theory of respondeat superior or supervisor liability, they are facially deficient. *See Ashcroft v. Iqbal*, 556 U.S. at 676-77; *see also Solan v. Ranck*, 326 F. App'x 97, 100 (3d Cir. 2009). Other than as noted, the Amended Complaint does not allege any direct or personal involvement by Pierce and Phelps other than in their capacities as prison administrators.

For the above reasons, the claims against Pierce and Phelps will be dismissed as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

**Due Process**. Liberally construing the Amended Complaint, as the Court must, Plaintiff appears to allege that his due process rights were violated as a result of the investigation, the disciplinary report he received, the finding of guilt and sanction of five days in isolated confinement, and the denial of his appeal. Plaintiff alleges that Runyon stated that he saw Plaintiff fighting but he could not see who Plaintiff was fighting, and Runyon's disciplinary report "suggests" that Plaintiff was attacked yet Runyon charged Plaintiff with fighting. (D.I. 23 at 5). To the extent Plaintiff alleges that Runyon prepared a false disciplinary report, the filing of false disciplinary charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges. *Crosby v. Piazza*, 465 F. App'x 168, 172 (3d Cir. 2012) (citing *Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002)). Plaintiff does not allege that he was denied a hearing. Therefore, to the extent he asserts a due process violation against Runyon, the claim fails.

8

Plaintiff also seems to allege that his due process rights were violated when the version of events he provided Floyd, Heishman, and Burman was not accepted, Welcome found him guilty and sanctioned him to five days in isolated confinement, and Rispoli denied his appeal. The Due Process Clause itself confers no liberty interest in freedom from state action taken "within the sentence imposed." *Sandin v. Connor*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). State created liberty interests protected by the Due Process Clause are generally limited to restraints on prisoners that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin*, 515 U.S. at 484).

In deciding whether a protected liberty interest exists under *Sandin*, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003). With regard to the limited duration of time Plaintiff spent in isolated confinement, he fails to state a constitutional claim on the facts alleged. *See Fantone v. Herbik*, 528 F. App'x 123, 129 (3d Cir. 2013) (no procedural due process claim when inmate complained of 35 days in isolation, the court stating, "we have held that this type confinement does not constitute an 'atypical and significant hardship' so as to trigger due process rights.").

To the extent Plaintiff alleges that he did not receive the procedural due process he was due, again he cannot prevail. If "restraints on a prisoner's freedom are deemed to fall 'within the expected perimeters of the sentence imposed by a court of law,'" then the prisoner does not have a "protected liberty interest" and "the state owed him no

9

process before placing him in disciplinary confinement." *Mitchell v. Horn*, 318 F.3d at 531; *see also Henderson v. Kerns-Barr*, 313 F. App'x 451, 452 (3d Cir. 2008) (assuming that plaintiff was not afforded the protections called for by *Wolff*, because the sanction of 90 days disciplinary confinement did not affect the inmate's release date, there was no liberty interest and, therefore, no trigger of due process rights). According to the allegations in the complaint, Plaintiff was sanctioned to five days of isolated confinement, an amount of time that does not implicate a protected liberty interest. He therefore lacks the requisite liberty interest to implicate a due process violation.

The Amended Complaint fails to articulate a protected liberty interest with respect to Plaintiff's discipline and confinement, and classification. Therefore, the Court will dismiss the claims against Phelps, Pierce, Runyon, Floyd, Heishman, Burman, Rispoli, and Welcome as legally frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

**Conditions of Confinement; Failure to Protect.** Plaintiff states in a conclusory manner that he is in an unsafe environment and needs to be free of danger. It is not clear if Plaintiff attempts to allege a condition of confinement claim or a failure to protect claim.

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of the "minimal civilized measure of life's necessities." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *see Wilson v. Seiter*, 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official, it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and

10

(2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To prevail on an Eighth Amendment failure to protect claim, a plaintiff is required to show that (1) he is incarcerated under conditions posing a substantial risk of serious harm; and (2) prison officials acted with deliberate indifference in that they knew of and disregarded an excessive risk to inmate health or safety. *See Farmer*, 511 U.S. at 833-34; *see also Griffin v. DeRosa*, 153 F. App'x 851 (3d Cir. 2005).

The conclusory allegations do not rise to the level of constitutional violations and do not state either a condition of confinement claim or a failure to protect claim. The claims will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**Medical Needs.** Plaintiff alleges Fuh, Neba, and Doe Defendants were deliberately indifferent to his serious medical needs, did not provide him with adequate care, did not accurately report his medical condition, and lied in his medical records. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). "[P]rison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). Although "[a]cts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" constitute cruel and unusual punishment under the Constitution, *Estelle v. Gamble*, 429 U.S. at 106, merely negligent treatment does not give rise to a constitutional violation, *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Indeed, "[a]llegations of medical malpractice are not sufficient to establish a

11

Constitutional violation," nor is "[m]ere disagreement as to the proper medical treatment." *Spruill*, 372 F.3d at 235.

Plaintiff's allegations and the records he provided indicate that on October 3, 2016, when he was assessed prior to his stay in isolation, there was "no redness" in his ear and "no apparent distress." Plaintiff alleges that he complained to "every officer" for nearly 48 hours that he needed to see medical. (D.I. 23 at 12). He does not name the officers or nurses who told him to submit a sick call slip. On October 5, 2016, Plaintiff began receiving treatment for his injuries and, after that, he was seen by medical personnel on numerous occasions. When he complained about medication doses, the problem was corrected. Plaintiff was sent to outside medical providers, medical testing was performed, and while surgery was recommended, Plaintiff was hesitant to proceed with it.

The allegations indicate there was a slight delay in providing Plaintiff treatment, but Plaintiff does name the prison officials or medical personnel he believes responsible. Moreover, Plaintiff received treatment and, even if he disagreed with the treatment or diagnoses, the allegations amount to "mere disagreement as to the proper medical treatment," and are insufficient to state a plausible constitutional violation. *Spruill v. Gillis*, 372 F.3d at 235; *see also Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978) ("Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim.").

When reading the Amended Complaint in the most favorable light to Plaintiff, he fails to state actionable constitutional claims against the medical Defendants for deliberate indifference to a serious medical need. Accordingly, the medical needs

12

claims against Fuh, Neba, and the Doe Defendants will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

Plaintiff was provided an opportunity to amend to cure his pleading defects, yet he failed to do so. The records he provided indicate that further amendment is futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Grayson v. Mayview State Hosp.*, 293 F.3d at 108; *Jones v. Camden City Bd. of Educ.*, 499 F. App'x 127, 129 (3d Cir. 2012).

## CONCLUSION

For the above reasons, the Court will dismiss the Amended Complaint, in part as legally frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1), and, in part, for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) The Court finds amendment futile.

An appropriate Order will be entered.